THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIM PSOMAS, individually and on behalf of all others similarly situated )<br>)<br>)<br>*Plaintiff*, )<br>v. )<br>)<br>)<br>CHICAGO TRANSIT AUTHORITY )<br>)<br>*Defendant*. ) | No. 24 C 12173<br><br>Chief Judge Virginia M. Kendall |

**MEMORANDUM OPINION & ORDER**

Plaintiff Jim Psomas brings this class action lawsuit against Defendant Chicago Transit Authority (CTA), under the Americans with Disabilities Act (ADA), for disability-based discrimination relating to CTA's COVID-19 vaccination policy. Psomas alleges three causes of action against CTA, all of which he brings on behalf of himself and a putative class: (I) failure to accommodate; (II) retaliation on the basis of disability; and (III) discrimination on the basis of a perceived disability. CTA's moves to strike the putative class allegations and to dismiss Psomas's individual claims for discrimination and retaliation. For the following reasons, the Court grants, in part, CTA's Motion [19].

**BACKGROUND**

This case concerns CTA's treatment of employees who requested medical accommodations in response to CTA's COVID-19 vaccination policy. (*See generally* Dkt. 1). The Complaint alleges that at the highest levels of the company, CTA willfully pre-determined that it would not perform individualized assessments of each unvaccinated employee's specific circumstances to determine whether a reasonable accommodation option was available and

1

instead, chose to terminate CTA employees entitled to an exemption. (*Id.* at ¶ 53). The policy led CTA to summarily deny at least 119 out of 120 employees' requests for medical exemptions from complying with CTA's COVID-19 vaccine policy. (*Id.* at ¶ 2). All of these employees were subsequently terminated "for-cause," losing wages and other benefits. (*Id.* at ¶ 91).

The events allegedly unfolded as followed: On September 3, 2021, CTA announced that all of its employees would have to receive a COVID-19 vaccine. (Dkt. 1 ¶ 33). On September 13, 2021, at the direction of his doctor, Psomas requested an accommodation from the CTA Accommodation Review Committee so that he did not have to comply with the vaccine mandate because he has Hashimoto's Disease. (*Id.* at ¶ 34). Hashimoto's is an autoimmune disorder affecting the thyroid gland; the disease leads to symptoms such as pain, fatigue and sluggishness, goiter, joint pain, and weakness. (*Id.* at ¶ 22). Though CTA formally denied Psomas's request with a letter, it functionally accommodated his request for the next several months. (Dkt. 23 at 2). CTA's other unvaccinated employees were also given functional accommodations, which included CTA requiring such employees test once a week and provide proof of a negative COVID-19 test. (*Id.*)

Despite its ability to accommodate, Psomas claims that CTA determined that it would not permanently accommodate any putative class member, regardless of their essential duties, location, access to free or low cost COVID-19 testing, remote work status, ability to work remotely, and/or any individual circumstances. (Dkt. 23 at 4). On January 24, 2022, CTA revoked what had become a functional accommodation for Psomas. (*Id.*) CTA terminated Psomas on January 31, 2022. (*Id.* at ¶ 50).

The same was true of the other allegedly disabled employees who had requested accommodation. CTA denied almost every request and demanded that each member of the putative class abandon his disability needs if he desired to preserve his career. (*Id.* at ¶ 46). Subsequently,

2

all others in class were either terminated or forced to retire. (*Id.* at ¶ 51). CTA allegedly treated those terminations as "for-cause" resulting in extended periods of lost wages, lost 401(k) contributions, lost vacation time, and lost healthcare benefits. (*Id.* at ¶ 91).

Psomas seeks damages, including back pay, front pay, liquidated damages, punitive damages, lost benefits, compensatory damages, damages for emotional distress, pain and suffering, reasonable attorney's fees and costs, declaratory relief, and injunctive relief. (Dkt. 1 ¶ 13). CTA moves to strike all of the class allegations and to dismiss Psomas's individual claims for retaliation and discrimination based on a perceived disability. (Dkt. 19).

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

CTA moves to strike Psomas's three class allegations (i.e., failure to accommodate, retaliation based on disability, and discrimination based on perceived disability) arguing that Psomas has failed to plead facts sufficient to support a Rule 23 class action. (Dkt. 20 at 4). Additionally, CTA moves to dismiss Psomas's individual retaliation and discrimination based on perceived disability claims. (Dkt. 20 at 11–15).

### I. Motion to Strike

#### a. Legal Standard

Striking class allegations at the pleading stage is only appropriate "when [the allegations] are facially and inherently deficient . . . ." *See, e.g., Miles v. Am. Honda Mot. Co., Inc.*, 2017 WL 4742193, at *5 (N.D. Ill. Oct. 19, 2017) (quoting *Cholly v. Uptain Group, Inc.*, 2015 WL 9315557, *3 (N.D. Ill. Dec. 22, 2015)); *see also Huddleston v. Am. Airlines*, Inc., 2018 WL 4742097, at *2 (N.D. Ill. Oct. 2, 2018).

Federal Rule of Civil Procedure 23(a) requires a plaintiff class to satisfy the requirements of numerosity, commonality, typicality, and adequacy. Fed R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). In identifying these factors, the rule requires:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (2) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed R. Civ. P. 23(a). In addition to satisfying Rule 23(a), Rule 23(b)(3) requires a class action be maintained only if "questions of law or fact common to class members predominate over any

questions affecting only individual members, and [ ] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

### b. Timing of Certification

Rule 23(c)(1)(A) requires courts to determine whether to certify an action as a class action "[a]t an early practicable time" in the case. Fed R. Civ. P. 23(c). While the decision to strike material "is within the discretion of the court," *see Cannata v. Forest Pres. Dist. of Du Page Cty.*, 2006 WL 2927604, at *6 (N.D. Ill. Oct. 11, 2006), "the general rule is that motions to strike are disfavored." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). This is partly because the plaintiffs in such instances have not had the benefit of discovery. *See Bohn v. Boiron, Inc.*, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013) (collecting cases).

As such, courts should only strike class allegations at the pleading stage where the plaintiffs' class allegations are facially and inherently deficient. *Id.* at 5–6; *see also Guzman v. N. Illinois Gas Co.*, 2009 WL 3762202, at *2 (N.D. Ill. Nov. 6, 2009) (because plaintiffs bear the burden of Rule 23 requirements, striking at pleading is generally inappropriate because defendants hold information key to meeting those requirements). If the dispute concerning class certification is factual in nature, a pre-discovery motion to strike is premature. *See, e.g., Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) (collecting cases). Still, there are times when the complaint makes it clear that class certification is inappropriate. *See, e.g.,*

*Murdock-Alexander v. Tempsnow Emp.*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016); *Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *3 (N.D. Ill. Aug. 1, 2019).

Psomas has not yet filed a motion for class certification. Accordingly, this Court's review is limited to whether the class allegations in the Complaint, (Dkt. 1), are too facially or inherently defective to establish a class action. *Miles*, 2017 WL 4742193, at *5.

### II. Psomas's Claims

#### a. Failure to Accommodate (Count I)

CTA moves to strike Psomas's failure to accommodate claim. (Dkt. 20 at 1). CTA broadly contends that Psomas cannot maintain a Rule 23 failure to accommodate because Psomas cannot establish commonality (i.e., whether there are questions of law or fact common to the class) and typicality (i.e., whether the claims or defenses of the named plaintiff are representative of the class as a whole for such claims). (Dkt 20 at 5–8); Fed R. Civ. P. 23(a).

To sufficiently plead a claim for failure to accommodate under the ADA, the plaintiff must demonstrate: (1) that he "is a qualified individual with a disability;" (2) that the defendant "was aware of her disability;" and (3) that the defendant "failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)). CTA argues that because members of the class may have different handicaps and request different accommodations, whether a member's proposed accommodation is reasonable will vary from case to case. (Dkt. 20 at 6) (citing *Wright v. Mishawaka Hous. Auth.*, 225 F. Supp. 3d 752, 762 (N.D. Ind. 2016)). This demonstrates, CTA contends, that there is not "a common answer on liability" for class members. (Dkt. 20 at 6) (citing *Rogers v. Sheriff of Cook Cnty.*, 2020 WL 7027556, at *5 (N.D. Ill. Nov. 29, 2020)).

On the other side, Psomas argues that CTA overstates the daylight that exists between class members' circumstances; specifically, Psomas alleges that the "systemic failure" at CTA to afford reasonable accommodations applies with equal force to everyone in the proposed class; each member requested the same medical accommodation but was rejected. (Dkt. 23 at 7) (citing *Newkirk v. Pierre*, 2020 WL 5035930, at *8–9 (E.D.N.Y. Aug. 26, 2020)); (Dkt. 1 ¶¶ 115–32). Further, Psomas contends that if CTA must make individualized assessments, the Court can still treat claimants as a class because CTA has all the records necessary to address whether a putative class member has a qualifying disability. (Dkt. 23 at 8). Finally, he argues that CTA itself created a class by treating the claimants differently based on underlying medical conditions, which precluded vaccination—this allows the class to meet the commonality requirement. (*Id.*)

The Court agrees with Psomas—CTA's request that the Court strike the failure to accommodate claim is premature because CTA has not demonstrated the Complaint "is facially and inherently deficient." *See Miles*, 2017 WL 4742193, at *5. In his Complaint, Psomas offers many potential common questions of law including "[w]hether CTA instituted a 100% no accommodation policy" and "[w]hether requiring Disability Class Members to comply with the Mandate violated the ADA, regardless of whether any particular individual was disabled, because CTA treated the unvaccinated individuals as though they were disabled in violation of 42 U.S.C. § 12101(3)(A)." (Dkt 1 ¶ 108).

Moreover, there is also a plausible common injury, stemming from the CTA's allegedly nearly 100% "no-accommodation" policy. (*See* Dkt. 23 at 4). Though the specifics of each case may vary, there is a potential common question of law and fact that pertains to the entire class. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) (finding a common injury among class members from the same unsolicited, offensive phone calls.). As

7

alleged, CTA could have accommodated any of the disabled class with low cost COVID-19 tests instead of denying all of the members a disability-based accommodation. (Dkt. 1 ¶¶ 2, 109). Because it is plausible that some "systemic failure" led to CTA finding that these employees were ineligible for a vaccine exemption, without any discovery, it would be inappropriate for the Court to strike this allegation based on lack of commonality, as CTA requests. (*Id.* at ¶ 53); (Dkt. 20 at 6); *see also Chicago Teachers Union v. Bd. of Educ. of Chicago*, 797 F.3d 426, 438 (7th Cir. 2015) (explaining that determining whether a common policy affects a class in sufficiently uniform way often involves a fact-intensive inquiry.); *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011), *overruled on other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class."). Moreover, because Psomas alleges that the entire class was impacted the same way by the same blanket denial policy, it means that the Court could resolve the issue "in one stroke," which is part of the commonality analysis. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Psomas has likewise sufficiently established typicality at this stage. Psomas allegedly suffers the same harm as other members in the class—he was denied reasonable accommodation for a medical condition (in his case, Hashimoto's Disease), despite its availability. (Dkt. 1 ¶¶ 25, 115–32). Even if Psomas's medical condition differs from others in the class, this does not necessarily undermine typicality. *See Powell v. Shiseido Americas Corp.*, 2022 WL 19914948, at *7 (C.D. Ill. Aug. 22, 2022) (finding plaintiff established typicality where plaintiff went on different website than other class members but nonetheless suffered same harm).

It is still certainly possible that discovery will show class certification is unwarranted. If discovery shows that liability determinations will depend on an extremely fact-intensive inquiry

into each class members' medical conditions, for example, it may be inappropriate. *See Butler v. Illinois Bell Tel. Co.*, 2008 WL 474367, at *6 (N.D. Ill. Feb. 14, 2008). At this early stage, however, striking the class allegations is premature. *See, e.g.*, *Shirley v. Staffing Network Holdings, LLC*, 2016 WL 6599951, at *4 (N.D. Ill. Nov. 8, 2016) ("Determining whether the Rule 23 requirements have been satisfied requires a "rigorous analysis," and a court need not conduct an analysis before sufficient information has been presented."); *Hussein v. Coinabul, LLC*, 2014 WL 7261240, at *3 (N.D. Ill. Dec. 19, 2014) (same). Accordingly, the Court denies CTA's request for it to strike Psomas's class allegations for failure to accommodate.

### b. Retaliation (Count II)

#### i. CTA's Request for Court to Dismiss Claim

CTA also moves to dismiss Psomas's individual ADA retaliation claim and to strike the retaliation class allegations. (Dkt. 23 at 11). There are two methods to make a prima facie retaliation claim: direct and indirect. To plead a retaliation claim under the direct method of proof, a plaintiff must demonstrate that: "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection between the two." *Koty v. DuPage Cnty., Illinois*, 900 F.3d 515, 519 (7th Cir. 2018) (quoting *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)). Under the indirect method, a plaintiff must demonstrate that he (1) engaged in protected activity; (2) was performing his job satisfactorily; and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." *Dickerson*, 657 F.3d at 601.

Psomas alleges that CTA "contest[ed] unemployment benefits for any disabled employee terminated for not taking the vaccine." (Dkt. 1 at ¶ 137). Construing the facts in Psomas's favor, therefore, Psomas contends that he engaged in a statutorily protected activity (i.e., requesting a

9

medical exemption) and suffered an adverse action (i.e., when CTA contested unemployment benefits for that group of employees). (*Id.*); *see also Brode v. Xeris Pharms., Inc.*, 2023 WL 7220554, at *3 (N.D. Ill. Nov. 2, 2023) ("Statutorily protected activity under the ADA can range from formal charges to informal complaints, as long as the complaint gives the employer sufficient notice that the employee is invoking her rights under the ADA or protesting ADA-violations."); *Coffey-Sears v. Lyons Twp. High Sch. Dist. 204*, 2017 WL 1208439, at *10 (N.D. Ill. Mar. 31, 2017) ("Material adverse employment may include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.") (Citation modified).

Psomas's claim fails, however, because he demonstrates neither a "causal link" between his protected activity and the adverse action (if proceeding under the direct method) nor that he was "singled out" for unfavorable treatment (if proceeding under the indirect method). Psomas, therefore, does not fully satisfy the elements under either method. *See Dickerson*, 657 F.3d at 601.

Under the direct method, Psomas alleges no facts, which demonstrate a "causal connection" between his requesting a medical exemption and losing unemployment benefits. *Koty*, 900 F.3d at 519. As CTA points out, any causal link is undermined because Psomas requested an exemption (i.e., the protected activity) *after* CTA announced it would terminate anyone who did not get the vaccine. (Dkt. 20 at 12). According to the policy, therefore, CTA would have terminated Psomas regardless of whether he requested a medical exemption. (Dkt. 20 at 12); *see Johnson v. Mount Sinai Hosp. Grp., Inc.*, 2023 WL 2163774, at *7 (E.D.N.Y. Feb. 22, 2023) ("While the plaintiff's refusal to comply with the defendant's COVID-19 policies was clearly the basis for her termination, the defendant *adopted its policies before* the plaintiff objected to

10

vaccinations and masking.") (emphasis added). Psomas, therefore, has not demonstrated a causal connection.

Under the indirect method, Psomas's allegation also falls short. Nothing in Psomas's Complaint indicates that he or the others in the disabled class received *worse* treatment because of their requests for exemption than anyone else who did not get the vaccine. In other words, nothing shows that CTA "singled out" Psomas for adverse action, which is required to make a retaliation claim under the indirect method. *Dickerson*, 657 F.3d at 601; *Harper v. C.R. England, Inc.*, 687 F.3d 297, 310 (7th Cir. 2012) (affirming judgment against plaintiff because he failed to show that he was treated less favorably than similarly situation individuals).

In his Response, Psomas successfully rebuffs CTA's claim that his retaliation claim is duplicative of his failure to accommodate claim and therefore, the Court should dismiss the former. (Dkt. 23 at 12). Even if both claims stem from the underlying denial of the exemption, the allegations' overlap does not render the retaliation claim duplicative; indeed, such overlap is not uncommon. *See Dumka v. Johnson*, 2015 WL 9268369, at *5 (N.D. Ill. Dec. 19, 2015) (denying motion to dismiss where plaintiff's ADA failure to accommodate claim is related to her retaliation claim).

This argument, however, does not save Psomas's retaliation claim for the reasons stated above. Accordingly, the Court dismisses Psomas's retaliation claim with leave to amend. Because of this, the Court need not address CTA's Motion to Strike the class allegations. *See Garnett v. Millennium Med. Mgmt. Res., Inc.*, 2010 WL 5140055, at *1 (N.D. Ill. Dec. 9, 2010).

### c. Discrimination Based on Perceived Disability (Count III)

#### i. CTA's Request to Dismiss Claim

CTA also moves to dismiss Psomas's perceived disability claim for failure to state a claim and to strike the class allegations. (Dkt. 20 at 12). Under the ADA, a person is "regarded as" disabled if he establishes that he "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Further, the plaintiff must plead facts that show the employer regards the employee as currently having the impairment; the "regarded as" prong does not reach an employer's concern about a future impairment. *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 335–36 (7th Cir. 2019).

CTA frames the discrimination claim's viability as hinging on whether the status of being "unvaccinated" qualifies as a disability according to the law. Overwhelmingly, courts have found that being classified as "unvaccinated" is not considered a disability under the ADA. *See, e.g., Brode*, 2023 WL 7220554, at *3 ("[b]eing unvaccinated is not an on-going impairment" under the ADA) (citations modified); *Applegate v. St. Vincent Health, Inc.*, 2023 WL 3603975, at *3 (S.D. Ind. May 23, 2023) ("Plaintiffs' chief problem with their proposed ADA claim is that their vaccination status is not itself a disability or impairment, nor do Plaintiffs cite legal support for such a contention."); *Halczenko v. Ascension Health, Inc.*, 2023 WL 3558907, at *2 (S.D. Ind. May 19, 2023) (explaining that not getting vaccinated is not a disability under the ADA because a disability "is not something a person chooses").

Psomas does not, however, stake his claim on his unvaccinated status; rather Psomas alleges that CTA discriminated against him because of his medical impairment, which prevented him from getting vaccinated. Psomas writes: "CTA acted as though unvaccinated employees with

12

medical impairments would burden the company through, among other things, presenting an increased risk to miss work due to their medical impairments that precluded vaccination, which in CTA's mind would result in decreases to company productivity." (Dkt. 1 ¶ 149). Put differently, Psomas alleges that CTA discriminated against him for having a medical impairment—Hashimoto's Disease—which prevented him from getting vaccinated.

Psomas's claim, therefore, is distinct from the caselaw to which CTA cites. For example, in *Brode*, the court dismissed a woman's perceived disability claim because its entire basis was that her employer perceived her status as an unvaccinated person as a disability. 2023 WL 7220554, at *3. Here, unlike in *Brode*, Psomas concedes that unvaccinated status is not a basis for a perceived disability claim under the ADA but maintains that CTA discriminated against him because of his Hashimoto's Disease. (Dkt. 23 at 14–15). This distinguishes the instant case from *Brode*. WL 7220554, at *3. Similarly, in *Applegate*, in justifying its dismissal of the plaintiffs' claim, the court wrote that "the decision to vaccinate or not to vaccinate is a personal choice, while a disability under the ADA is not something a person chooses." 2023 WL 3603975 at *3. Unlike in *Applegate*, where the plaintiffs had a choice of whether to get the vaccine, Psomas claims that his medical impairment prevented him from making such a choice. (Dkt. 23 at 15). Psomas alleges that CTA viewed him as a danger because his medical impairment prevented him from getting the vaccine. (*Id.*) Thus, the facts of Psomas's case distinguish it from *Brode* and *Applegate*.

Psomas has sufficiently alleged a perceived disability claim under the ADA. He claims that the CTA sought to "rid itself" of workers like Psomas "to ensure that [CTA] would not incur hypothetical increased business costs due to employees whose medical impairments prevented vaccination." His claim is like that of the plaintiffs in *O'Callaghan v. Syneos Health, Inc.*—a case in which a North Carolina district court denied the defendant employer's motion to dismiss their

13

allegedly disabled employees' perceived disability claim. 2024 WL 4341723, at *2 (E.D.N.C. Sept. 27, 2024). The defendant employer had granted medical accommodations to the disabled plaintiffs, then fired them when they did not get vaccinations—while others who were not disabled and were able to get vaccinations were not fired. *Id.* at *2. Similarly, here, Psomas alleges that he was fired not because he chose not to comply with the vaccine policy, but because he was unable to comply with it. This is sufficient to survive a motion to dismiss.

### ii. CTA's Request to Strike Class Allegations

Finally, for the same reasons CTA moves to strike the failure to accommodate class allegations, (*see* Dkt. 20 at 5–9), CTA also moves to strike the perceived disability class claims. (*Id.* at 10). As discussed above, it would be premature to strike the class allegations at this stage in the litigation. Plaintiffs have not yet moved for class certification, and "the standards for class certification are more exacting than those for a run-of-the-mill motion to dismiss." *See Burton v. Hodgson Mill, Inc.*, 2017 WL 1282882, at *5 (S.D. Ill. Apr. 6, 2017).

Psomas alleges that CTA treated the entire "regarded as disabled" class—those who had physical impairments, which led them to request an exemption from the CTA COVID-19 vaccination policy, which led to their status as unvaccinated—differently from other employees who did not have such physical impairments. (Dkt. 23 at 12). Further, Psomas alleges that for purposes of the discrimination claim, CTA perceived each member as having the same physical impairment and adverse employment action. Discovery will enable the Court to better assess whether class certification is, in fact, appropriate. *See Kurt v. Platinum Supplemental Ins.*, Inc., 2021 WL 3109667, at *13 (N.D. Ill. July 22, 2021) (denying motion to strike class allegations where discovery could help court assess whether class certification is warranted); *see also Rogers*

14

*v. Dart*, 2025 WL 1359120, at *7 (N.D. Ill. May 9, 2025) (certifying class even where plaintiffs have varying disabilities or issues regarding exhaustion of administrative remedies).

Accordingly, CTA's request that the Court strike the class allegations of discrimination based on a perceived disability is denied. *See Murdock-Alexander v. Tempsnow Emp't*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)) (noting that the Seventh Circuit has warned that motions to strike are generally "disfavored" as plaintiffs have the burden of meeting Rule 23 but defendants generally control the information plaintiffs need to meet that burden).

## CONCLUSION

For the forgoing reasons, the Court grants, in part, CTA's Motion to Dismiss [19]. The Court denies CTA's Motion as to the failure to accommodate and discrimination based on a perceived disability claims. The Court dismisses, without prejudice, Psomas's retaliation claim.

_____
Virginia M. Kendall
United States District Judge

Date: July 23, 2025